**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
PENSION BENEFIT GUARANTY
CORPORATION,

                         Plaintiff,

          - against -

BRENTWOOD YARN MILLS, INC.
a New York Corporation, as Plan Administrator
for the Brentwood Yarn Mills, Inc., Pension Plan,

                        Defendant.
-------------------------------------------------------------X

**REPORT AND RECOMMENDATION**

CV 05-5317 (DRH) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

**I.    PRELIMINARY STATEMENT**

Following the default of Defendant Brentwood Yarn Mills, Inc. and entry of default judgment by the Clerk of the Court, District Judge Hurley referred this matter to me for an inquest on damages and attorneys' fees. *See* Electronic Order, June 17, 2008. Judge Hurley's Order further stated that "the scope of the foregoing reference shall be deemed to encompass such additional authority as reasonable or necessary to perform the foregoing duties and is not inconsistent with the Constitution of the United States." *Id.*

At the outset, it should be noted that Plaintiff Pension Benefit Guaranty Corporation ("Plaintiff" or "PBGC") is not seeking damages in this case. Rather, PBGC seeks relief in other forms. PBGC brings this action under Title IV of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1301-1461 seeking, pursuant to 29 U.S.C. §§ 1342 and 1348(a)(4), (1) to terminate the Brentwood Yarn Mills, Inc. Pension Plan (the "Plan"); (2) to be appointed as statutory trustee of the Plan; (3) to establish January 5, 1990 as the termination date

of the Plan; and (4) to require Defendant Brentwood Yarn Mills, Inc. ("Defendant" or "Brentwood") "and any other person or entity having possession, custody, or control of any of the records, assets, property, or documents relating to the Plan [to] transfer, convey and deliver all such records, assets, property and documents" to Plaintiff. Compl. ¶1.

Based on the information submitted by Plaintiff, and for the reasons set forth below, the Court finds that Plaintiff is entitled to each element of the relief requested in its motion. Therefore, I respectfully recommend to Judge Hurley that: (1) the Plan be terminated; (2) Plaintiff be appointed trustee of the Plan; (3) the termination date of the Plan be set at January 5, 1990; and (4) Plaintiff's request for an order requiring transfer of all records, assets, property and documents of the Plan be granted.

## II. BACKGROUND

### A. Procedural History

Plaintiff commenced this action on November 10, 2005 pursuant to 29 U.S.C. §§ 1342 and 1348(a)(4) seeking the relief described above. On January 12, 2006, Defendant, "by and through its alleged President, JEROME KIVIAT," filed a motion to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(2), (b)(3), (b)(4), and (b)(5) based upon improper venue, insufficient process, and insufficient service of process [DE 5]. No attorney appeared on behalf of Defendant. Rather, Mr. Kiviat, Defendant's president, filed the motion *pro se*. *Id.* By electronic Order dated January 23, 2006, Judge Hurley terminated the motion to dismiss finding that "the defendant corporation can only appear in Court with counsel and cannot be represented *pro se* by its principal. Moreover, the motion was filed in contravention of this Court's Individual Rules." Electronic Order, Jan. 23, 2006.

Subsequently, no attorney entered an appearance on behalf of Defendant and no Answer or other response to the Complaint was ever filed. On June 17, 2008, Judge Hurley entered default judgment against Defendant and referred the action to me pursuant to 28 U.S.C. § 636(b)(3) for an inquest. On June 30, 2008, Plaintiff filed a letter enclosing the certificate of default, the Complaint, and a proposed default judgment order [DE 14]. In that June 30 letter, Plaintiff clarified that it was not seeking monetary damages, but "a judgment under Title IV [of ERISA] to terminate the Plan as of January 5, 1990, to have PBGC appointed trustee of the Plan, and to require the production of all assets, records, and other property to PBGC as the Plan's trustee." *Id.* By Order dated July 28, 2008, I directed Plaintiff to file and serve all documentation in support of its request for relief and Defendant to file and serve any opposition by the dates specified in the Order [DE 15]. Plaintiff filed the necessary supporting papers. Defendant, however, did not file any opposition despite Plaintiff having presented evidence that Defendant was properly served.

B.  **Factual Background**

A default constitutes an admission of all well-pleaded factual allegations in the Complaint and the allegations as they pertain to liability are deemed true. *Joe Hand Promotions, Inc. v. El Norteno Restaurant Corp.*, No. 06 Civ. 1878, 2007 WL 2891016, at *2 (E.D.N.Y. Sept. 28, 2007) (citing *Greyhound Exhibitgroup, Inc. v. E.I.U.I. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992), *cert. denied*, 506 U.S. 1080 (1993)). A default judgment entered on the well-pleaded allegations in a complaint establishes a defendant's liability. *See Garden City Boxing Club, Inc. v. Morales*, No. 05 Civ. 0064, 2005 WL 2476264, at *3 (E.D.N.Y. Oct. 7, 2005) (citing *Bambu Sales, Inc. v. Ozak Trading, Inc.*, 58 F.3d 849, 854 (2d Cir. 1995)).

The Complaint in this matter contains the following factual allegations. Defendant was a New York corporation engaged in the manufacture of novelty yarns and had its principal facility located in Brentwood, New York. Compl. ¶¶ 5-6. The Plan is a "tax-qualified single-employer defined benefit pension plan and is covered by the plan termination insurance program established under Title IV of ERISA." *Id.* at ¶ 11. The Plan provides pension benefits for approximately 13 of Defendant's employees. *Id.* at ¶¶ 12-13.

On May 1, 1989, Defendant filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. On January 5, 1990, the case was converted to an action under Chapter 7 of the Bankruptcy Code. *Id.* at ¶ 9. Subsequently, Defendant ceased operations and liquidated. *Id.* Although Defendant had previously administered the Plan and served as its contributing sponsor, since the time that Defendant ceased operations and liquidated, the Plan has had no administrator. *Id.* at ¶¶ 7,8, 13. In addition, there are several Plan participants currently eligible to receive benefits under the Plan but the Plan currently lacks the assets to make such payments. *Id.* at ¶ 13.

PBGC is a United States government agency and a "wholly-owned United States government corporation established under 19 U.S.C. § 1302(a) to administer and enforce the defined benefit pension plan termination insurance program created under Title IV of ERISA." *Id.* at ¶ 4. "When an underfunded Plan terminates, [PBGC] pays statutorily granted pension benefits to plan participants." *Id.*

In 1992, an investigation conducted by the United States Department of Labor revealed that Jerome Kiviat, Defendant's president and the trustee of the Plan, had "unlawfully removed all of the assets of the Plan . . . through 'loans' and other transactions prohibited under Title I of

ERISA." *Id.* at ¶ 15. Although Mr. Kiviat and his family reached a settlement with the Department of Labor, this settlement did not provide for the repayment of any money to the Plan. *Id.* Accordingly, Plaintiff determined that the Plan did not have available assets to pay the benefits currently due under the Plan's terms. *Id.*

On September 8, 2005, PBGC issued a Notice of Determination to Defendant, as administrator of the Plan, stating that PBGC had determined the Plan had insufficient assets to pay benefits currently due and that the Plan must be terminated to protect the interests of the Plan participants. *Id.* at ¶ 23. Copies of the Notice of Determination were sent to the Defendant corporation's last known address, the Office of the Secretary of State of New York, and Mr. Kiviat's last known address. *Id.* at ¶ 23, Exs. 1(a), (b), & (c). This action followed.

### III. LEGAL STANDARD

Plaintiff PBGC was created by Congress to "encourage the development of private pension plans and to ensure that plan participants receive the benefits promised by their employers." *In re Pension Plan for Employees of Broadway Maint. Corp.*, 707 F.2d 647, 648 (2d Cir. 1983). PBGC is required by statute to "operate a mandatory insurance program that guarantees plan participants a certain minimum level of benefits if their employers terminate pension plans with inadequate funds." *Id.*; *see generally* 29 U.S.C. § 1302(a). In addition, PBGC is required to institute proceedings to terminate any single-employer pension plan "as soon as practicable" whenever PBGC "determines that the plan does not have assets available to pay benefits which are currently due under the terms of the plan." 29 U.S.C. § 1342(a). In such a situation, PBGC may "apply to the appropriate United States district court for a decree

adjudicating that the plan must be terminated in order to protect the interests of the participants . . . ." 29 U.S.C. § 1342(c)(1).

When PBGC is required to initiate termination proceedings, it may, upon notice to the plan at issue, "apply to the appropriate United States district court for the appointment of a trustee to administer the plan . . ." 29 U.S.C. § 1342(b)(1). PBGC may request that it be appointed as trustee of such a plan. *Id.* When a court issues a decree that a plan must be terminated in order to protect the interests of its participants, the court must authorize the appointed trustee to terminate the plan. 29 U.S.C. § 1342(c)(1). In that case, the trustee has the power to "require the transfer of all (or any part) of the assets and records of the plan to himself as trustee." 29 U.S.C. § 1342(d)(1)(A)(ii).

## IV. DISCUSSION

### A. **Termination of the Plan**

Title IV of ERISA requires PBGC "as soon as practicable institute proceedings under this section to terminate a single-employer pension plan whenever [PBGC] determines that the plan does not have assets available to pay benefits which are currently due under the terms of the plan." 29 U.S.C. § 1342(a). An investigation conducted by PBGC has revealed that two participants in the Plan are currently eligible to begin receiving their benefits. Compl. ¶ 13; Mem. of PBGC for Relief on Default Judgment ("Pl. Mem.") at 7; Decl. of Susan P. Donahey in Supp. of Mem. of PBGC for Relief on Default Judgment ("Donahey Decl.") ¶ 8; Decl. of Curtis L. Hill in Supp. of Mem. of PBGC for Relief on Default Judgment ("Hill Decl.") ¶ 4. Moreover, PBGC has determined that the Plan does not have sufficient assets available to pay these participants their currently-owed benefits. Compl. ¶¶ 15-16; Pl. Mem. at 7; Decl. of Lois

Bruckner Parks in Supp. of Mem. of PBGC for Relief on Default Judgment ("Parks Decl.") ¶¶ 4-6, 11, 12, Exs. 2-4, 9, 10; Donahey Decl. ¶ 6.

Since the allegations as they pertain to liability are deemed true, PBGC has established that the Plan does not have sufficient assets to pay benefits currently due to Plan beneficiaries. Therefore, the Plan should be terminated "in order to protect the interests of the participants." 29 U.S.C. § 1342(c)(1); *see also Pension Benefit Guar. Corp. v. Nastasi White, Inc.*, 476 F. Supp. 2d 228, 229 (E.D.N.Y. 2007). Accordingly, I respectfully recommend to Judge Hurley that Plaintiff's motion for a decree terminating the Plan be GRANTED.

B. **Appointment of a Trustee**

Whenever PBGC initiates a proceeding to terminate a single-employer plan, such as the Plan at issue here, PBGC may apply to the Court "for the appointment of a trustee to administer the plan." 29 U.S.C. § 1342(b)(1). "[U]pon the petition of" PBGC, the Court "may appoint a trustee in accordance with the provisions of this section if the interests of the plan participants would be better served by the appointment of the trustee." 29 U.S.C. § 1342(b)(2).

PBGC can "request that it be appointed as trustee of a plan in any case," 29 U.S.C. § 1342(b)(1), and PBGC has made that request here. *See* Compl. ¶ 1, 22; Pl. Mem. at 7-8. PBGC states that it is "ready, willing, and able to serve as statutory trustee of the Plan." Compl. ¶ 22. Further, PBGC contends that its appointment as trustee of the Plan will serve the best interests of Plan participants because the former Plan administrator and sponsor are no longer available, the Plan cannot hire a private trustee because the Plan has no assets, and "PBGC has had almost thirty-four (34) years of experience serving as statutory trustee for terminated pension plans under Title IV of ERISA." Pl. Mem. at 7-8. PBGC asserts that it has already obtained

7

some Plan records and has "placed the two Plan participants who were immediately eligible to begin receiving their benefits into pay status on an estimated basis pending termination of the Plan and PBGC's trusteeship. Once the Plan has been terminated . . . and PBGC has been appointed trustee, all of the participants' guaranteed benefits . . . can be finalized and any unpaid back benefits owed . . . can be paid to them." *Id.* at 8.

The Court finds that it is in the interest of the Plan's beneficiaries to appoint PBGC as trustee of the Plan. Accordingly, I respectfully recommend to Judge Hurley that PBGC's motion to be appointed trustee of the Plan be GRANTED.

        **C.**        **Establishment of a Termination Date**

PBGC also seeks an Order establishing January 5, 1990 as the termination date of the Plan. Compl. ¶ 19. The termination date is normally established by an agreement between PBGC and the plan administrator. *See Nastasi White, Inc.*, 476 F. Supp. 2d at 229. However, when a plan is terminated pursuant to 29 U.S.C. § 1341(c) and no agreement as to the termination date has been reached between the plan administrator and PBGC, as is the case here, the statute provides that the termination date shall be "the date established by the court." 29 U.S.C. § 1348(a)(4).

The Second Circuit has created a framework for courts to use when establishing a single-employer pension plan's termination date. A court should consider only two factors: "the expectations of the participants and the financial implications of termination for PBGC." *In re Pension Plan for Employees of Broadway Maint. Corp.*, 707 F.2d 647, 652 (2d Cir. 1983) (adopting the test set forth in *PBGC v. Heppenstall Co.*, 633 F.2d 293, 300-01 (3d Cir. 1980)). "[T]he financial interests of the employer should play no role in setting a termination date." *Id.*

As for the first factor – the expectations of the participants – the Court must determine "the earliest date when the Plan's participants had actual or constructive notice of the Plan's termination, *i.e.*, notice sufficient to extinguish their reliance interest." *Id.* at 652-53 (internal citation omitted). Because constructive notice "operates to extinguish a plan beneficiary's reliance, simple fairness requires a definition of constructive notice that requires facts strongly suggesting actual notice exists without requiring that actual notice be proved." *In re Pan Am. World Airways, Inc. Coop. Ret. Income Plan*, 777 F. Supp. 2d 1179, 1184 (S.D.N.Y. 1991) "While constructive notice can be a slippery notion, it 'should be the time when a potential plan beneficiary should have known there was a substantial chance that the plan on which the beneficiary had relied would be terminated.'" *Nastasi White, Inc.*, 476 F. Supp. 2d at 230 (quoting *In re Pan Am. World Airways, Inc.*, 777 F. Supp. 2d at 1184).

Plaintiff contends that the Court should set the termination date as January 5, 1990, the day on which Defendant's "Chapter 11 bankruptcy case was converted to a liquidation under Chapter 7." Pl. Mem. at 9. Specifically, Plaintiff asserts:

> On that date it was clear that Brentwood was permanently ceasing operations, and that the employee participants would no longer continue to work for Brentwood or accrue additional benefits under the Plan, giving them constructive notice that the Plan would no longer continue after that date. Establishment of a later termination date will not serve the interests of PBGC because Brentwood has already liquidated as a no-asset estate.

*Id.* at 9-10. The Court agrees and finds that Plan participants were placed on constructive notice as of the date that Defendant's Chapter 11 bankruptcy case was converted to a liquidation pursuant to Chapter 7 of the Bankruptcy Code. As of that date, Plan participants received information that Defendant was ceasing its operations, and were thus placed on notice that the

9

Plan would be terminated. *See Nastasi White, Inc.*, 476 F. Supp. 2d at 230 (finding "the beneficiaries were placed on constructive notice when the defendant ceased operations"); *accord Pension Benefit Guar. Corp. v. Mize Co., Inc.*, 987 F.2d 1059, 1062-63 (4th Cir. 1993) (adopting test set forth by the Second Circuit in *In re Pan Am. World Airways, Inc.* and affirming lower court's setting the termination date on day that employer closed operations); *Pension Comm. for Farmstead Foods Pension Plan for Albert Lea Hourly Employees v. Pension Benefit Guar. Corp.*, 991 F.2d 1415, 1420-21 (8th Cir. 1993) (holding that "in situations where the PBGC is interpreting provisions of Title IV of ERISA, the recommendation proffered by the PBGC [as to termination date] should be accorded deference").

Having determined the earliest date on which Plan participants had actual or constructive notice of the Plan's termination, the Court turns to the second factor – the financial implications of the termination for PBGC. The Court must now "select whatever later date serves the interests of PBGC." *In re Pension Plan for Employees of Broadway Maint. Corp.*, 707 F.2d at 653. PBGC has proposed that the termination date be set at January 5, 1990. Compl. ¶ 19; Pl. Mem. at 9. The Court is "entitled to conclude" that this date proposed by PBGC "adequately serves the interests of PBGC." *Id.*; *Nastasi White, Inc.*, 476 F. Supp. 2d at 230 (noting that PBGC "has requested November 30, 2003 as the termination date, and thus this date likely represents an advantageous date from its perspective") (internal citation omitted).

Accordingly, I respectfully recommend to Judge Hurley that Plaintiff's motion to set January 5, 1990 as the termination date of the Plan be GRANTED.

### D. Order to Transfer Plan Assets to the Trustee

Finally, Plaintiff requests an Order requiring "Defendant and any other person or entity having possession, custody, or control of any of the records, assets, property, or documents relating to the Plan transfer, convey, and deliver all such records, assets, property and documents to PBGC." Compl. ¶ 1. By statute, an entity that has been appointed trustee of a single-employer pension plan pursuant to 29 U.S.C. § 1342(b) has the power "to require the transfer of all (or any part) of the assets and records of the plan to himself as trustee." 29 U.S.C. § 1342(d)(1)(A)(ii). Plaintiff maintains that, should it be appointed as the Plan's trustee,

> [this] authority is necessary to PBGC's responsibilities under § 1342(d)(1)(B) to calculate and pay Title IV guaranteed benefits, to collect for the Plan any amounts due the Plan, to commence, prosecute, or defend any suits or proceedings involving the Plan, to issue any required notices or reports, or to do any other actions necessary to comply with Title IV of ERISA, any court orders, or to protect the interests of the Plan participants and beneficiaries.

Pl. Mem. at 10. The Court finds that if PBGC is appointed trustee of the Plan, as I have respectfully recommended in Section IV.B, "then it has the statutory power to require" the transfer of any Plan assets to itself as trustee. *See Nastasi*, 476 F. Supp. 2d at 230.

Accordingly, I respectfully recommend to Judge Hurley that Plaintiff's motion for an Order requiring Defendant and any other person or entity having possession, custody, or control of any of the records, assets, property, or documents relating to the Plan to transfer, convey, and deliver all such records, assets, property and documents to PBGC be GRANTED.

### V. CONCLUSION

For the reasons set forth above, I respectfully recommend to Judge Hurley that Plaintiff's motion (1) for a decree that the Plan be terminated; (2) to be appointed as statutory trustee of the

Plan; (3) to establish January 5, 1990 as the termination date of the Plan; and (4) to require Defendant and any other person or entity having possession, custody, or control of any of the records, assets, property, or documents relating to the Plan to transfer, convey and deliver all such records, assets, property and documents to Plaintiff be GRANTED in its entirety.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report and Recommendation to file written objections. *See also* Fed. R. Civ. P. 6(a) and (e). Such objections shall be filed with the Clerk of the Court via ECF. A courtesy copy of any objections filed is to be sent to the chambers of the Honorable Denis R. Hurley, and to the chambers of the undersigned. Any requests for an extension of time for filing objections must be directed to Judge Hurley prior to the expiration of the (10) day period for filing objections. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir.), *cert. denied*, 522 U.S. 883 (1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

**SO ORDERED.**

Dated: Central Islip, New York
       January 6, 2009

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge